HARRY N. BAETJER, ET AL., recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrido.

Núm. 1053.—*Sometido:* Junio 12, 1939. *Resuelto:* Noviembre 10, 1939.

*Fiddler, Córdova & McConnell,* abogados de los recurrentes; el registrador recurrido compareció por escrito.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

H. N. Baetjer, C. K. Bowie, A. H. S. Post, H. E. Boyce, H. E. Henneman, J. A. Stevenson y L. Naetzker, fiduciarios conocidos colectivamente como Eastern Sugar Associates, un fideicomiso, han recurrido para ante esta corte contra la nota del Registrador de Caguas, de mayo 15, 1939, denegando la cancelación de cierta hipoteca, alegando al efecto:

"1. Que el día 27 de abril de 1939 los recurrentes presentaron en el Registro de la Propiedad de Caguas la escritura número 33 otorgada en abril 21 de 1939 ante el notario don Guillermo E. González sobre protocolizac'ón de una escritura otorgada en la ciudad de Montreal, Dominio del Canadá, el 15 de julio de 1938, ante el notario Mister Robertson Welton Gibb, por Montreal Trust Company a favor de The Porto Rico Railway, Light & Power Company.

"2. Que en dicha escritura . . . se cancelaba, en cuanto a ciertas propiedades . . . una hipoteca constituída por The Porto Rico Railway, Light & Power Co., a favor de la Montreal Trust Co. por escritura número 30 otorgada el 9 de junio de 1917, para garantizar la suma de $5,000,000 de principal, intereses al 8 por ciento anual más $100,000 para costas, gastos y honorarios de abogado.

"3. Que los recurrentes presentaron al Registro de la Propiedad la escritura número 33 . . . con el único propósito de cancelar la hipoteca de referencia en cuanto a ciertas fincas propiedad de los recurrentes . . .

"4 Que el día 15 de mayo de 1939 el Registrador recurrido denegó la inscripción . . . por los fundamentos que alega en su nota . . ." a saber:

". . . constar del Registro que de acuerdo con la resolución adoptada por el Comité Ejecutivo de la Montreal Trust Co. de fecha 16 de enero de 1917 se declaró que la hipoteca debía entenderse otorgada a favor de los Tenedores de los bonos, representados por dicha Montreal Trust Co., como así se constituyó la hipoteca, y habiendo comparecido en la escritura de cancelación que precede la Montreal Trust Co., para cancelar la hipoteca constituída en garantía de bonos hipotecarios, sin que de la misma escritura de cancelación conste que ésta sea la tenedora de tales bonos hipotecarios, sin que conste que tales bonos hipotecarios estén debidamente cancelados de acuerdo con la ley; con el defecto de no haberse acreditado la tenencia de los bonos hipotecarios por la Montreal Trust Co., al efecto de que los mismos hayan sido inutilizados por el Notario de acuerdo con la ley."

Continúan alegando los recurrentes que no están conformes con la nota y en documento aparte exponen en extenso las razones que tienen para ello que son, substancialmente, las que siguen:

"A través de la lectura de los términos del bono, de la hipoteca y de la inscripción en el Registro que se acompañan, se ve claramente que no se constituyó hipoteca para garantizar individualmente cada bono convirtiéndoles en bonos hipotecarios según lo dispone la sección 153 de la Ley Hipotecaria . . . (siendo) la intención de las partes . . . crear la hipoteca directamente a favor del 'trustee', y crear un fideicomiso sobre la hipoteca cuyos beneficiarios son los que resulten tenedores de los bonos. Así es que la garantía detrás de los bonos es el compromiso del 'trustee' de tener la hipoteca para beneficio de los bonistas. El 'trustee' tiene ciertas obligaciones y ciertos poderes expresamente conferidos en la escritura de hipoteca y el . . . bonista sabe que no adquiere una hipoteca a su favor sino un certificado de beneficio de una hipoteca a favor de un 'trustee'.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"El propósito de dejar en manos de un 'trustee' las facultades de cancelar la hipoteca es muy sabio. Esta clase de hipotecas es usada por las grandes corporaciones y compañías de servicio público que necesitan tomar a préstamo grandes cantidades bajo condiciones de plazo é interés no obtenibles de las instituciones bancarias. Una compañía que emite bonos por $5,000,000 divididos en bonos de $100 cada uno y que los garantiza con hipoteca sobre toda su propiedad real y mueble no debe estar obligada cada vez que le sea conveniente a sus intereses disponer de parte de su propiedad, a obtener el consentimiento unánime de los cincuenta mil bonistas para que la venta se efectúe libre de gravámenes. Para evitar esto se nombra en la escritura un 'trustee', se constituye hipoteca a su favor y se le faculta con poderes de cancelación. Usualmente se nombra 'trustee' a instituciones bancarias de alta solvencia económica, cuyo prestigio comercial en la comunidad sea una garantía para la inversión que haga el futuro bonista."

Examinemos los documentos.

■■ De la escritura de hipoteca otorgada ante el notario público P. Amado Rivera en junio 29 de 1917 en esta ciudad de San Juan, aparece que dueña la Porto Rico Railway, Light & Power Co. de las fincas que hoy pertenecen a los

recurrentes y de otras, las hipotecó para garantizar obligaciones al portador a emitir por valor de cinco millones de dólares de la manera y bajo las condiciones que constan en el documento.

Comparecieron de una parte Charles S. Jenner representando a la Compañía y de la otra Richard Gilmore Allen como agente de Montreal Trust Company designada subsiguientemente como el Trustee. Los poderes y facultades de los comparecientes aparecen de la escritura que contiene una descripción completa de los bienes hipotecados entre ellos la de las fincas 58, 50, 60, 61 y 62 que son las que fueron vendidas luego por la Compañía y hoy pertenecen a los recurrentes.

A la página 53 del documento encontramos lo que sigue:

"That it is the intention of the parties hereto that the said mortgage or mortgages to be executed by the said Railway Company in favor of the said Trustee in accordance with the forms and requirements of the laws of Porto Rico shall be registered in the name of the said Trustees in Porto Rico and shall be held as security for the payment of the said bonds issued hereunder, and the said additional sum of one hundred thousand dollars and that the said bonds, through the medium of this mortgage and of each and every mortgage and other instrument supplemental hereto which may be executed as herein provided, are to be secured in accordance with the laws of Porto Rico by all the property, rights and franchises now owned or hereafter acquired by the said Railway Company which may be lawfully mortgaged under said laws."

Luego se dice:

"That in consideration of the sum of one dollar paid by the Trustee (the receipt of which, after due notice as required by law in such cases, is acknowledged by the said Railway Company), and in order to secure the payment of the principal and interest on all bonds . . . Charles S. Jenner, the party of the first part hereto, in his capacity as Vice President of the said Railway Company and pursuant to authority conferred upon him by the said Railway Company as aforesaid and on behalf of the said Company, has executed and delivered these presents and has thereby mortgaged in favor of the said Trustee, its successors and assigns, forever, all of the property, rights and fran-

chises hereinbefore described under letters . . . Unto and to the use of the said Montreal Trust Company as trustee, its successors in the said trust, their and each of their assigns, upon and for the trusts, intents and purposes hereinafter expressed of and concerning the same, and subject to all the rights, reservations, exceptions and conditions herein set forth. And it is hereby agreed and declared that the bonds to be issued under this Indenture shall be bonds of the denomination of one hundred thousand dollars each. And that it is hereby agreed and declared that the proposed form of the said bonds and of the certificate of the Trustee thereon are to be, except as to the serial number of said bonds, substantially in the following form, to wit.''

Se transcribe completa la forma de los bonos. De ella copiamos:

''This bond is one of a series of bonds of one hundred thousand dollars ($100,000.00) each of like tenor and effect issued and to be issued for an aggregate principal sum not exceeding five million dollars ($5,000,000) under and in pursuance of and all equally secured by and subject in all respects to the terms of a mortgage in trust . . . This bond is subject to the terms of the said mortgage, which is hereby referred to for descriptions of the mortgaged premises and the nature and extent of the security; the rights of the holders of the bonds secured by it and the terms and conditions under which said bonds are issued and which rights, terms and conditions are made part of this bond.''

Luego, a la página 64 dice el Trustee:

''The Trustee accepts the trust herein created and covenants and agrees that it will hold, this mortgage and any and all mortgages or other instruments duly executed and delivered to it by the said Railway Company at any time or times hereafter together with all property, rights, and privileges thereby secured to the trustee, in trust, nevertheless, for the security, use and benefit of the holders of the bonds of the Railway Company to be issued under the terms of this mortgage, and as trustee for the holders of the said bonds and of the legal representatives, successors and assigns of the said bondholders; and it hereby convenants and agrees to and with the said Railway Company and with the holders of the said bonds, that in the execution of this trust and in the foreclosure of this mortgage or of said other mortgages or instruments and in the management, disposal or conveyance of the property and premises covered thereby and in

the disposition of the proceeds and profits arising or to arise from any sale to be made as herein contemplated, or otherwise, the said trustee will be governed by the stipulations of this mortgage.''

Lo dicho está contenido en el artículo primero. En el segundo, se consigna, en parte, lo que sigue:

''The object and intention of this mortgage is to create, under and in accordance with the laws of the Island of Porto Rico, a mortgage, charge or lien (subject only as aforesaid) in favor of the said Trustee upon ALL AND SINGULAR the hereinbefore described property, . . . ''

En el tercero, en parte:

· ''The bonds to be secured by this mortgage shall be without coupons, and shall bear date the first day of July, A. D., nineteen hundred and sixteen and shall be for the sum of one hundred thousand ($100,000) dollars each and numbered consecutively. The said bonds shall from time to time be executed by the said Railway Company as in this mortgage provided. They shall be signed by the President or Vice-President of the said Railway Company and the Corporate seal of the Company shall be thereunto affixed and attested to by the signature of the Secretary of the said Company.''

En el quinto, en parte:

''The said Railway Company shall have the right to redeem any part of the bonds issued hereunder at any time before their maturity at the par value of the bonds and a premium of ten per cent together' with accrued interest thereon up to the time fixed for said redemption . . . Upon presentation to the Trustee of all of said authorized issue of bonds which at the time shall have been issued and outstanding in case all of the said bonds shall have been duly called for redemption as aforesaid, then, upon presentation of portion thereof and upon payment by the said Railway Company to the Trustee of the amount necessary for redemption thereof as aforesaid and the Trustee having credited to such of said bonds as shall not have been presented for redemption the redemption price thereof at the rate aforesaid and the interest thereon, the Trustee shall cancel and discharge this mortgage and deed of trust as fully and to the same effect as if the total issue of the said bonds had been duly paid by the said Railway Company at the maturity thereof. All bonds redeemed under this clause shall be forthwith cancelled by the said Trustee.''

En el octavo, en parte:

"These presents are upon the express condition that, if the said Railway Company shall well and truly pay to the holders of the said bonds the amount of such bonds and interest as same shall respectively become due and payable and shall also pay as aforesaid all rates, taxes and charges whatsoever payable upon or in respect of the said mortgaged premises and shall observe and perform the conditions herein contained, then these presents shall cease and shall be utterly null and void and the mortgaged premises shall revert to and revest in the said Railway Company without any acknowledgment of satisfaction, release, acquittance, reconveyance, re-entry or other act or formality whatever. But in such case and whenever the said bonds and interest thereon as aforesaid shall have been paid and satisfactory evidence shall have been given to the Trustee of such payment it shall nevertheless be the duty of the Trustee at the expense of the said Railway Company, to execute, acknowledge and deliver to the said Railway Company upon demand full releases and reconveyances of the mortgaged premises not lawfully disposed of under the trusts and powers herein contained.

*　　　*　　　*　　　*　　　*　　　*　　　*

"The Trustee shall also from time to time release from the lien hereof or thereof any part or parts of the property subject to these presents or to any further or supplemental mortgage or other instrument, whenever the said Railway Company shall cause a deposit to be made with the Trustee of money equal in amount to the portion of said mortgage moneys and expenses apportioned to such part or parts of the property of the mortgaged premises by these presents or by any such further or supplementary mortgage or upon the deposit with the Trustee as aforesaid of such less amount as shall be shown to be the value of the property so to be released by the joint affidavit of the President and Treasurer of the said Railway Company or at the discretion of the Trustee by the affidavit of one or more competent and disinterested persons selected by it and paid by the said Railway Company; and the Trustee shall further release any portions of separate parcels hereby or by any further or supplemental mortgage or other instrument described, upon payment of the value of said portion, fixed by affidavit as aforesaid."

Y, por último, se fijan en el artículo diez los poderes del trustee, como sigue:

"The Trustee may at any time and from time to time with the concurrence of the said Railway Company and with or without the

express approval of the bondholders or any of them as in the uncontrolled discretion of the Trustee shall seem wise:

"(a) Sanction the sale or release of any part of the mortgaged premises, and accept as consideration or part consideration therefor, bonds, stocks or other securities of any Company;

"(b) Sanction any modification or compromise of the rights of the bondholders or of the Trustee against the Company or against its. property or of the mortgaged premises, or of any of them, whether such right shall arise under these presents or otherwise;

"(c) Assent to any modification or variation of .the provision contained in these presents which shall be proposed by the said Railway Company or recommended by the Trustee and execute any deed embodying the same to supplement these presents;

"(d) Sanction of any scheme for the reconstruction of the said Railway Company or for its consolidation with any other Company or the substitution of any other Company or corporation as the debtor to the bondholders, and may authorize all such acts, assurances and things to be done as may be necessary for carrying such scheme into effect;

"(e) Accept any other property or securities instead of the bonds. and in particular any other bonds or debenture stock of the said Railway Company and give the same preference over the present issue."

Siendo ésos los términos del contrato original de garantía ¿pudo el *Trustee* otorgar la escritura de cancelación de que se trata en los términos en que lo hizo?

Dicha escritura, protocolada en Puerto Rico, se otorgó ante el notario público de la ciudad de Montreal, Dominio del Canadá, el quince de julio de 1938, por Montreal Trust Company representada por su Assistant General Manager F. G. Donaldson, haciéndose constar en ella:

"*First*.—That Porto Rico Railway, Light & Power Company has. represented that it is the owner of the following properties: (Se describen sesenta y nueve fincas entre las cuales están comprendidas. las números 58, 50, 60, 61 y 62 de que aquí se trata.)

"That the properties hereinbefore marked 1 to 69 inclusive are mortgaged in favour of the said Montreal Trust Company, to secure the payment of the principal, interest with deed number thirty (30) executed at San Juan, Puerto Rico, before Notary Public Pedro Amado Rivera, on June twenty-ninth, nineteen hundred and seventeen, a copy of which was duly inscribed in the Registry of Property of San Juan

and Caguas, Puerto Rico, the following amounts having been·allocated to the properties mentioned in this paragraph: (Se fijan los montantes.)

"*Third.*—That the aggregate sum allocated and apportioned to said properties under said mortgage deed is therefore the sum of one million sixty-one thousand eight hundred fifty dollars ($1,061,850) of principal and twenty one thousand two hundred thirty seven dollars ($21,237) of expenses.

"*Fourth.*—That the said Porto Rico Railway, Light and Power Company has requested the Montreal Trust Company to release said properties from that part of the mortgage apportioned and allocated to them according to the deed mentioned hereinbefore and the said Montreal Trust Company having agreed to comply with the said request does hereby execute said release in accordance with the following terms and conditions:

"A. Montreal Trust Company, in consideration of the sum of One Million sixty one thousand eight hundred fifty dollars of principal ($1,061,850) and Twenty one thousand two hundred thirty seven dollars ($21,237) of expenses, Canadian currency, the part of the total amount secured by the said mortgage specifically allocated therein to the properties designated 1 to 69 inclusive, hereinbefore to it paid by Porto Rico Railway, Light and Power Company prior to this act, hereby cancels, releases and discharges, the said mortgage mentioned in preceding paragraph marked *First,* in so far and in so far only as said mortgage encumbers the said properties.

"B. Montreal Trust Company hereby consents that the RELEASE AND CANCELLATION of the Mortgage in its favour mentioned and described above be inscribed or registered in the proper registries of property of Puerto Rico as to the immovable property described herein.

Montreal Trust Company accepts and approves the present instrument in all its parts, binding itself, its successors and assigns to be and abide that which is herein set forth."

Siendo como es ello así, surge a nuestro juicio de la totalidad de la transacción la facultad del *trustee* para hacer la cancelación que hizo, debiendo en su consecuencia verificarse la inscripción correspondiente de ella en el registro de la propiedad.

Es cierto que el artículo 82 de la Ley Hipotecaria en su parte final disponía:

"Las inscripciones hechas para responder de cantidades representadas por títulos al portador no podrán cancelarse, cuando no pueda acreditarse en el Registro la extinción de todas las obligaciones aseguradas, sino presentándose testimonio de la declaración judicial de quedar extinguidas dichas obligaciones.

"En el caso del párrafo anterior, para decretarse la declaración judicial deberán preceder cuatro llamamientos por edictos públicos y en los periódicos oficiales, y tiempo cada uno de ellos de seis meses, a los que tuvieren derecho a oponerse a la cancelación."

Y que en la actualidad, tal como fué enmendado por la Ley núm. 22 de 1923, pág. 219, ordena que:

"Las inscripciones hechas para responder de cantidades representadas por títulos al portador o trasmisibles por endoso, se cancelarán presentándose la escritura otorgada por los que hayan cobrado los créditos, en la cual debe constar haberse inutilizado en el acto de su otorgamiento, los títulos endosables o al portador. Si todos o algunos de dichos títulos se hubiesen extraviado, sólo podrán cancelarse dichas inscripciones por medio de mandamiento judicial creditivo de haber recaído sentencia firme, obtenida por el procedimiento ordinario del Código de Enjuiciamiento Civil, en que se declare haber quedado extinguidas dichas obligaciones."

Pero esas disposiciones se dictaron para los casos en que la hipoteca se constituye para garantizar directamente obligaciones al portador, y no para cuando dichas obligaciones se garantizan constituyendo la hipoteca a favor de un *trustee* con las facultades que se le confirieron en este caso y todo ello consta no sólo de la escritura de hipoteca misma si que de cada una de las propias obligaciones de tal modo garantizadas.

Son principios de derecho reconocidos por la jurisprudencia que "lo convenido es la ley del contrato para las partes y sus causahabientes", que "los pactos han de cumplirse según fueron otorgados", que "en los contratos deben buscarse, en vez de rehuirse, las soluciones que den por resultado el que aquéllos tengan valor" y que "la calificación de los contratos debe hacerse por sus cláusulas esenciales mejor que por el nombre que les den las partes al otorgarlos". Scaevola. Código Civil.—Apéndice 2—52 y siguientes.

Si tratáramos de aplicar forzadamente los preceptos de la Ley Hipotecaria sobre cancelación de hipotecas constituídas para garantizar cantidades representadas por títulos al portador, a casos como éste en que interviene un *trustee* con las facultades y deberes que conocemos, a sabiendas de los que adquieren en el mercado dichos títulos, desnaturalizaríamos la naturaleza de la transacción o la dificultaríamos exigiendo el cumplimiento de algo que se ideó y promulgó para salvaguardar intereses que en este caso no corren el riesgo que tuvo en mente y llevó a actuar al legislador.

Habiendo llegado a la conclusión expuesta, *debe revocarse la nota recurrida y ordenarse la cancelación que se interesa.*